*461
 
 Gaston, Judge.
 

 After stating the pleadings and proofs as above, proceeded :
 

 Many of the depositions give the opinion of the witnesses as to the general character of
 
 Buxton Bryant,
 
 for truth on oath, and are in this respect directly at points with each other. Some of the witnesses relate conversations with him apparently confidential, and soon after the transaction, concurring with the account which he afterwards gave on his examination, and others depose to conversations with the same witness in which his statements were at variance with that to which he after-wards testified. According to all of the witnesses, he appears to have been a man of talents and education, who once sustained a fair character, who afterwards became intemperate and indulged in- excessive drinking, and finally fell a victim to that vice. At what step he stood in this descending scale when the transaction took place, or when his deposition was taken, it is not easy from the testimony of the witnesses to determine.
 

 The original deed to the defendant is not upon file, but a copy is produced, accompanied with an affidavit from the defendant that the original had been placed in the hands of his counsel, Mr.
 
 Henderson,
 
 and since the death of that gentleman, he has not been able to procure it.— From this copy it appears to have been executed on 4th August, 181"5, and to have been exhibited for probate at May Term, 1816, the term succeeding that at which administration on the estate of the intestate was granted to the plaintiff. The will mentioned as having been prepared for him by the witness
 
 Bryant
 
 is not produced, nor. any account given of it. If in existence, it. would have been a very important paper to conform or counteract
 
 Bryant9s
 
 statements — and if in existence, it must be presumed, from the control which the defendant had over the affairs of the intestate, to be in his possession.'
 

 After all the testimony had been taken, and these exhibits filed, the cause was set down for hearing and came on to be heard before the Judge of the Court of Equity for the county of Rowan, at the April term 1825, of said Court, when his honor was pleased to direct an issue in
 
 *462
 
 the following words to be submitted tó a Jury: “Was the deed of gift mentioned in the .plaintiff’s bill from
 
 Burch Cheshire
 
 to
 
 ¿quilla Cheshire
 
 fairly or fraudulently obtained?” And a jury being charged with the trial of said issue, returned a verdict that the said deed was fraudulently obtained. A rule for a new trial was granted, which was held over until October term, 1826, when it was made absolute. The cause was continued until October term, 1828, when by consent of parties, it was removed to the court of the adjoining couuty of Da* vidson. In that court, at the April term, 1830, the same issue was again submitted to a jury, who also returned a verdict that the deed of gift mentioned in the plaintiff's bill, from
 
 Burch Cheshire
 
 to
 
 ¿quilla Cheshire
 
 was not fairly, buit fraudulently obtained. Thereupon the court ordered that the defendant should enter into a bond with good surety, payable to the plaintiff, in the sum of $500, for securing the payment of the hire of the negroes in contest; and that on his failing to do so, the sheriff should take the said negroes-into his custody, and hire tfiem out until the next term', taking bond and surety for the forthcoming of the negroes. It does not appear that any motion was made for a new trial of the issue, or for any order of the court to set aside the verdict; but at the next term, the same issue was again submitted to a jury, and they also found that the said deed of gift mentioned in the plaintiff's bill,from
 
 Burch Cheshire
 
 to
 
 ¿quilla Cheshire
 
 was not fairly, but fraudulently obtained. Upon the trial of this issue it appears from the transcript, that the Judge instructed the jury that they were not at liberty to find the same against the defendant,upon the testimony of a single witness,unsupported by circumstances furnished by the testimony of other witnesses — that the defendant, after the last mentioned verdict was rendered, moved to have it set aside, and to have a new trial awarded, because the said verdict w'as contrary to the weight of evidence — that this motion was overruled — that the defendant thereupon insisted that the plaintiff's bill ought to be dismissed because the testimony of the only witness relied upon to
 
 *463
 
 prove the fraud, was not supported by circumstances furnished by the testimony of any other witness. That this objection was overruled and thereupon the presiding Judge did declare and decree that the deed made by
 
 Burch Cheshire
 
 to the defendant
 
 Jlquilla,
 
 bearing date the 4 th of August, 1815, for the negro slaves
 
 Sam, Den. nis, Rachael
 
 and
 
 Rachael the younger, was
 
 obtained by fraud, and that the said defendant do surrender the same to the clerk of this court, to be cancelled — that the defendant do deliver up to the plaintiff
 
 Dennis
 
 and
 
 Rachael
 
 the only survivors of these slaves, and Baal,the offspring of the other
 
 Rachael,
 
 on the plaintiff entering into bond and surety to have them and their issue forthcoming to answer the final decree of the court, and to pay their hires to the defendant in ease the final decision of the court should be in his favor — that the clerk and master should ascertain and report the value of the hire of the slaves since they have been in the defendant’s possession — whether any, and if any, which have died— whether they have had increase, and if so, the names and ages of such increase — whether the defendant is entitled to any credits, and if so, the amount thereof; and that the cause be held over for furtherproceedings; and it was further ordered that the master take an account of the value of the other property contained in the said fraudulent deed. Several other interlocutory orders, which it is not necessary particularly to recite, were subsequently passed, respecting the safe custody of the property. A petition was then filed to re-hear the order made at the April term, 1825, directing an issue of fact to be submitted to the jury; also to re-hear the decision of the Judge on the motion for a new trial of the issue at the October term, 1830 ; and the declaration and decree of Lis Honor at the said term, pronouncing the deed to be fraudulent, as herein before stated. This, petition was granted, and a report having been also made by the clerk, and exceptions taken thereunto, the •cause has been removed into this court for a final adjudication.
 

 On behalf of the defendant, it has been insisted on
 
 *464
 
 the re-heaping, that the interlocutory order for submitting an issue to a jury was contrary to the established rules of a Court of Equity, it is urged that according to these rules, wherever the defendant’s answer positively denies the allegations in the plaintiff’s bill, and these allegations are supported only by the testimony of a single witness, the court will neither make a decree against the defendant, nor send the case to be tried at law"— that in this case there was nothing more than the positive assertion of one witness, and a positive denial by the defendant: and that the witness whose assertion is the sole foundation of the plaintiff’s cause, shews himself by his own statement, wholly destitute of that integrity which should give him a claim to credit.. Of the first part of this proposition we entertain no doubt.— Where the denial of a defendant responsive to the plaintiff’s charge is clear, precise and positive, and it is met by the assertion of one witness only, equally clear, precise and positive, the court will not make a decree for the plaintiff, unless circumstances appear, shewing, no.t indeed absolutely, that the truth is with the witness, but that there is a strong moral probability that his statement is true. With regard to the next part of this proposition, we find much contradiction in the books, and some difficulty in extracting from them a distinct rule for regulating the discretion of a court in awarding an issue, On the one hand it seems to us th.at tiie rule not to decree against the answer upon the unsupported tes-, timony of a single witness, would be broken down, if whenever such a conflict existed, it could be left to a jury to decide whether greater credit should be given to the witness oi* to the party. But on the other hand, to order an issue only where the circumstances attaching credit to the assertion of the witness, clearly overbalance the credit due to the denial of the party, is calling on a jury where the Chancellor needs not its assistance, hut has sufficient matter whereon to found a decree. Perhaps it is impossible to lay down a rule in precise terms, and some latitude must be allowed for. the exercise of a sound discretion. It may be enough to
 
 *465
 
 gay that there ought to be some circumstances giving a preponderance to the testimony of the witness, independently of the suspicion against the answer, arising from t|ie interest of the party, before an issue should he award - cd/ but it is not necessary that these circumstance should he sufficient to producen clear Conviction on the mind of the Chancellor against the answer. If his inclination Upon these circumstances be in favor of the witness,but his conscience is still in doubt, he may with propriety order art issue,or tender one to the defendant, who may accept or decline at his peril, In this case there were circumstances tending strongly to confirm the testimony of the witness, fully sufficient, nay demanding a decision in conformity to that testimony, but for the admitted participation of the witness in the base fraud charged. I shall name but a few that seem to us natural.— The others, though also much insisted on in argument, Were not regarded as of much weight. The hour at Which the transaction took place, is calculated
 
 to
 
 give support to the narrative of the witness. According to tli’e testimony of
 
 Mainline,
 
 it must have been between 11 artd 12 o’clock at night, long after the period at which it is customary fin1 the plain farmers of our country, to retire to repose, and long after old age and infirmity arc Won't to seek in sleep for relief from weariness and care. The parties did not arrive at the house until two hours after dark, and front one to two hours elapsed afterwards before the witnesses were Called in to see the execution óf the instruments. Tiic time was peculiarly fitted for playing off the infamous trick Stated by
 
 Bryant,
 
 upon a man of eighty years of age, of weak sight, and infirm health, and no reason is given, if the purpose was an honest One, for selecting an hour so unusual for the transaction of business. This circumstance derives more W eiglit from its being in direct contradiction to the defendant’s answer, ivho aware of the suspicion it ought to excite, untruly states that the deeds were executed before early bed time. But the other circumstances stated by
 
 Mainline
 
 are far more strong. This witness and
 
 Sheets¡
 
 according to the defendant’s answer, were
 
 *466
 
 the very persons selected by the old gentleman to be the witnesses of this transaction. Yet after their arrival at the hotise, the defendant himself who had brought them thither, in pursuance of the intestate9!? request, and for the very purpose of attesting what should take place, asks them out of the room, in order that the old man might be left
 
 alone
 
 with
 
 Bryant,
 
 and they do not return for an hour or two, nor until they are wanted, for the purpose of seeing or hearing acknowledged the formal execution of the papers. If
 
 Bryant’s
 
 statement be true, we see at once an adequate motive for these witnesses being out of the way, while he shuffled off one of the papers, and substituted another in its place. If his statement be not true and the transaction was fair, the proceeding is wholly Unaccounted for, and unaccountable. There is no proof that there was any other individual in the house, except the old man,
 
 Bryant,
 
 the defendant, and these two witnesses; all, according to the defendant’s account, intended to be fully cognisant of what should take place, and relied upon to keep it a secret so long as he should live, in order to prevent an interruption among his children. The difficulty therefore in ascertaining the truth of the controverted matter of fact, did not arise from the want of circumstances to support the positive evidence of
 
 Bryant,
 
 but solely in deciding what degree of credit was due to the witness himself. As an acknowledged accomplice in the criminal act, lie was of 'course obnoxious to strong suspicions. Yet he was a Competent, witness, and his tale rendered highly probable by corroborating facts, testified to by witnesses above suspicion. We think that the court acted right in leaving it to a jury, knowing the witness, and knowing the defendant whose answer was relied on to pass upon the credit which, under all circumstances, was due to the testimony o'f the one, and the denial of the other.
 

 
 *464
 
 An issue should H.ot 5)8 directed ^answeriscon-tradicted t>y one
 

 Nor where the **¡^1 -stances which, ^"^credit the denial of the
 

 Bntoneispro-theWwitnessWand the answer, eir-evjaence create an 'nc35"the^for1 m®r, without e*ti. maingfeemterest or the defendant,
 

 
 *466
 
 We arc by no means satisfied with the general terms in which this issue was expressed. When a Judge wishes his conscience informed upon any matter of fact, the issue should bo so framed, as to present that fact precisely to the jury. Whether a deed has been fairly or
 
 *467
 
 fraudulently obtained, is a general and indefinite issue, which might involve matter of law as well as of fact.— jju£ Qn 200]t{ng into the instructions given by the Judge to the jury, on the last trial of the issue, and into the motion to dismiss the bill, we cannot but see, that however vague may have been the terms of the issue, it was treated by all, as one specific in its nature, and embracing the naked fact in dispute.
 

 The court therefore,does not reverse, but on the contrary, affirms the interlocutory order for the issue, nor does it see any reason to disapprove of the decision of the Judge, refusing a new trial. Three verdicts had been rendered all one way, and all founded upon sufficient proof, if
 
 Bryant
 
 ivas entitled to credit, and after thirty-six disinterested freeholders, selected by the parties, had
 
 on
 
 their oath declared that they believed him, it could not have been permitted to the Judge, to ask more for the satisfaction of his conscience, in this respect.
 

 As to the interlocutory order which was made at October term, 1850, so far as the same declared the deed obtained by the defendant, to have been obtained by fraud, and decreed the delivery of the negroes, and directed the master to take an account, the court doth approve thereof. (His Honor then proceeded to correct some miscalculations in the report, which it is unnecessary to state.)
 

 Pee Cueiam. — Judgment aittemed.